UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA      :
                              :
        v.                    : File No. 1:08-CR-24-1, -2
                              :
JOSHUA SWINGER                :
and ANDREW TAKATS             :
_____:

RULING ON MOTIONS TO SUPPRESS AND TO DISMISS
(Papers 32, 33 and 34)

I.  Introduction

Defendants Joshua Swinger and Andrew Takats are charged with bank robbery. Both Swinger and Takats move to suppress evidence seized from a car in which they were traveling, arguing that it was taken in violation of their constitutional rights under the Fourth Amendment. (Papers 32, 34.) Takats also moves to suppress statements to the police after he was taken into custody, arguing the statements were in violation of his constitutional rights under the Fifth Amendment. (Paper 34.)

The Court held an evidentiary hearing on December 10, 2008 and afforded the parties the opportunity to file supplemental memoranda. For the reasons set forth below, the Court denies the defendants' motions.

II. Background[1]

Swinger and Takats' arrests for a bank robbery in Poultney, Vermont stem from a traffic stop in Mahwah, New Jersey. On the afternoon of February 21, 2008, Mahwah police officer Michael Blondin stopped Swinger for traveling 72 miles per hour in a 55 mile per hour zone and for a missing brake light. Swinger also changed lanes without signaling. Takats was the only passenger in the car. Officer Blondin approached the car on the passenger side and, through the open window, the officer smelled odors he believed to be from burnt marijuana and beer. He also observed a prescription pill bottle, open beer cans, deodorizing spray, and a box of fabric softener. When Officer Blondin returned to the car after checking Swinger's credentials, the pill bottle had been moved out of sight.

Officer Blondin asked Swinger to exit the car. Swinger told Officer Blondin he and Takats were returning from visiting Swinger's sister at college in Vermont and Takats had been drinking the previous night. Officer Blondin left Swinger at the rear of the car and then asked Takats to exit and spoke with him at the front of the vehicle. Takats also said they had visited Swinger's sister at school, but he did not know its name, and went on to say that he and Swinger had gone to Vermont to

---

[1] The facts described in this section are undisputed or are found by the Court after the evidentiary hearing.

snowboard.  When Officer Blondin pointed out the lack of snowboarding equipment, Takats responded that they rented it, however, he was unable to explain why there was no winter clothing in the car.  Takats also claimed he had been drinking the previous night.

Officer Blondin searched the car and retrieved two open cans of beer and an unopened can that was cold as well as cash and a pellet gun in a backpack on the backseat.  He then called for backup, handcuffed Swinger and Takats, and verbally advised them of their Miranda rights.  Takats volunteered he did not know anything about the money and that he just sat in the car.  Swinger said he found the money but could not recall where.  Four other officers and detectives responded to the call for backup.  Officer Blondin then searched the car more thoroughly and found a bag of what he believed to be marijuana, a glass pipe with burnt vegetation, rolling papers, a bottle of Visine, the prescription pill bottle with a burnt cigarette he believed to be a marijuana cigarette, sunglasses, a wool hat, and a black hooded sweatshirt.

Officer Blondin drove Swinger to the police station.  Swinger was upset and began to talk to Officer Blondin.  Despite being reminded of his Miranda rights, Swinger admitted he had robbed a bank in Poultney Vermont that morning.  Officer Conley transported Takats to the police station.  During the trip, Takats repeatedly asked Officer Conley why he was in the car, but

according to Officer Conley, Takats never requested the assistance of an attorney.

The Vermont State Police verified that a Poultney bank was robbed that morning. At the police station, Swinger and Takats were again verbally advised of their Miranda rights and both signed a written form acknowledging they had been advised of the rights. Approximately two hours later, both Takats and Swinger signed prepared statements affirming they had been advised of their rights, were willing to give a statement, and that no one had made any threats or promises in return for the statement.

III. Discussion

    A.    Motions to Suppress Evidence

Reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for a law enforcement officer to make a traffic stop. United States v. Stewart, No. 07-3003-cr, 2009 WL 37484, at *5 (2d Cir. Jan. 8, 2009). A law enforcement officer may also "briefly detain a person if the officer has a reasonable suspicion 'that criminal activity may be afoot.'" United States v. Bayless, 201 F.3d 116, 132 (2d Cir. 2000) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). Reasonable suspicion should be based on specific and articulable facts objectively indicating unlawful conduct. Id. at 132-33 (internal citations omitted). The Court considers the totality of the circumstances and evaluates those circumstances "through the eyes

of a reasonable and cautious police officer on the scene, guided by his experience and training." Id. at 133 (internal citations omitted).

Under the automobile exception to the Fourth Amendment warrant requirement, police may also conduct a warrantless search of a motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime. United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) (internal citations omitted). Probable cause exists if the facts and circumstances are sufficient to lead a person of reasonable caution to believe that evidence of a crime will be found in the place searched. Id. at 456-57 (internal citation omitted). "[C]ourts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." Id. at 457 (internal citation omitted). Certainty is not required; only a fair probability that contraband or evidence of a crime will be found. Id. (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Finally, once an officer determines there is probable cause to make an arrest, the officer may search the entire passenger compartment to ensure safety and preserve evidence. Thornton v. United States, 541 U.S. 615, 623 (2004). When the arrestee is a recent occupant of the vehicle, an officer may search the vehicle incident to the arrest. Id. at 623-24.

Here, the traffic stop was justified because Officer Blondin had at least a reasonable suspicion of a traffic violation: (1) a radar gun clocked the car at 72 miles per hour in a 55 mile per hour zone; (2) a brake light was out; and (3) the car made an unsafe lane change.  After the initial stop, Officer Blondin then had a reasonable suspicion of criminal activity when he observed open beer cans and smelled burnt marijuana in the car.  <u>See, e.g.</u>, N.J. Stat. Ann. § 39:4-51b (prohibiting all occupants of a motor vehicle from possessing an open alcoholic beverage container).  This suspicion was strengthened when he noticed a prescription pill bottle he observed had been moved the second time he approached the vehicle.  Accordingly, Officer Blondin was justified in asking Swinger and Takats to exit the vehicle and when the defendants gave him inconsistent statements regarding their travels, he had reason to believe there might be contraband or evidence of a crime in the car.  Based on his experience and training, the facts and circumstances indicated there was a fair probability of Officer Blondin finding contraband or evidence.

Because both defendants were recent occupants of the car, Officer Blondin's second search after backup had arrived and Swinger and Takats were in custody was justified under <u>Thornton</u>.

B. <u>Motion to Suppress Statements</u>

An individual must be advised of Fifth Amendment rights before custodial interrogation and has the right not to speak and

6

to request an attorney while in custody. Miranda v. Arizona, 384 U.S. 436 (1966). Interrogation must stop until an attorney is present. Id. at 474. The government bears the burden of establishing by a preponderance of the evidence law enforcement officers properly advised an accused of his Fifth Amendment rights and that he made a knowing and voluntary waiver of those rights. Id. at 444; Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Ramirez, 79 F.3d 298, 304 (2d Cir. 1996). Furthermore, the government must show the defendant voluntarily relinquished his Miranda rights with a full understanding of the rights being waived and the consequences of waiver. Moran v. Burbine, 475 U.S. 412, 421 (1986).

An express written or oral waiver is not required; waiver may be "inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373 (1979). In assessing the defendant's comprehension and voluntariness of the waiver, the court must look to the totality of the circumstances, including the characteristics of the defendant, i.e., background, experience, and conduct, the setting surrounding the statement, and the conduct of the officers. Id. at 374-75; Green v. Scully, 850 F.2d 894, 901-02 (2d Cir. 1988). Other relevant factors include the defendant's age, education, and intelligence, failure to give Miranda warnings, length of detention, nature of the interrogation, and use of

physical punishment.  United States v. Guarno, 819 F.2d 28, 30 (2d Cir. 1987) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)).

Here, it is clear Takats waived his Miranda rights and that his waiver was knowing and voluntary.  Officer Blondin first advised Takats of his Miranda rights at the traffic stop, prior to his statement that he just sat in the car, and he was also advised of his rights at the police station verbally and in writing.  Takats argues the officers did not ask him whether he understood his rights, however, Miranda does not require an interrogator to make such an inquiry.  See United States v. Hall, 724 F.2d 1055, 1059 (2d Cir. 1983).  Though Takats never signed an express waiver, after acknowledging verbally and in writing that he had been advised of his constitutional rights, Takats spoke to Detective Hebert.  See United States v. Johnson, 289 F. Supp. 2d 151 (D. Conn. 2003) (refusing to suppress statement even though defendant was never asked to verify that he understood his rights).  Takats is not a minor, the entire episode from traffic stop to signed statement lasted less than five hours, the interview took place in an office, he was not physically coerced, and he confirmed he made the signed statement willingly.  The evidence supports the conclusion Takats understood the consequences of his statement, having made it after being warned and reminded that it could be used against

him, and Takats' decision to speak with the officers was a knowing, intelligent, and voluntary waiver of his rights.

To the extent Defendant Swinger also challenges his statement to the Mahwah police officers, it is denied for essentially the same reasons as pertain to Takats. At the hearing, Swinger requested the opportunity to submit a motion to suppress his statement, but did not follow up with a written motion.

IV. Conclusion

For the foregoing reasons, Defendant Swinger's motion to suppress evidence (Paper 32) is DENIED. Defendant Takats' motion to suppress evidence and statements made to the Mahwah police officers (Paper 34) is DENIED. Although Defendant Swinger's pleading was styled as a "Motion to Suppress Evidence and to Dismiss," the motion to dismiss was not addressed in the supporting memorandum of law or at the hearing. Accordingly, the Court finds the motion to dismiss (Paper 33) moot. This case will be placed on the March 24, 2009 trial calendar.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 6th day of February, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge